JEWELL STEEL & MALLEABLE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1040.   Promulgated September 19, 1928.

*E. C. Gruen*, *C. P. A.*, for the petitioner.
*L. C. Mitchell, Esq.*, for the respondent.

PHILLIPS: The petitioner appealed from the determination of a deficiency of $5,229.51 in income and profits taxes for 1917. The notice of the determination of the deficiency states:

The fact has been disclosed that practically all concerns earning anything near the rate of net income to gross income as the taxpayer paid excess profits taxes approximately the same as the taxpayer. It is, therefore, concluded that no exceptional hardship is worked on the taxpayer by denial of assessment under the provisions of section 210 of the Revenue Act of 1917.

The petition filed in this proceeding alleges as error:

The disallowance of assessment under the provisions of section 210 of the Revenue Act of 1917, not because of the nonexistence of abnormal conditions warranting such, but because " practically all concerns earning anything near the rate of net income to gross income as the taxpayer paid excess profits taxes approximately the same as the taxpayer," with apparently no comparison made to properly comparable taxpayers.

The benefits of section 210 of the Revenue Act of 1917 are claimed by the petitioner on the ground that its invested capital can not be determined; that certain assets were acquired at the time of its organization which are not reflected in invested capital. In support of

its assignment of error petitioner produced evidence of the determination by the Commissioner of the taxable income and of the taxes of three corporations which the petitioner contends are proper comparatives. One of these was engaged in the manufacture of steel castings and another in the manufacture of grey iron castings. The petitioner manufactured malleable iron castings, a product which is different from either grey iron or steel castings. The market for each product is different; the elements going into cost and entering into the determination of the profit from a sale are materially different. As to each of these we have only the net income and the tax determined to be due, without any information as to the amount of business done or its relation to taxable profits. There is the further objection that as to each of these corporations the Commissioner computed the tax under section 210 and we are without knowledge of what taxes these corporations would have paid under the normal provisions of the statute. For these reasons we are of the opinion that these corporations may not be considered proper comparatives, the evidence disclosing that there are others engaged in the same line of business and more nearly comparable with the petitioner.

The third corporation urged as a comparative by the petitioner was engaged in the same business as the petitioner and in the same city, it had a net income of $201,092.67 as compared with a net income of $306,815.60 for the petitioner, was granted assessment under section 210 and the profits tax determined at $80,618.05; a rate of 40.1 per cent. The tax determined against the petitioner was $141,434.13 which was 46.1 of its income. Although counsel for the petitioner in his brief purports to state the gross income from sales of the third corporation offered as comparative, as well as the gross income of the other two corporations offered as comparatives, we fail to find this information in the record. Thus we are without any knowledge of the invested capital, gross income, or deductions of the suggested comparative, without knowledge of the basis on which special assessment was granted to it, and without any basis on which to judge whether or not this corporation, although located in the same city as petitioner and having about the same type of plant, was sufficiently like petitioner in other respects to constitute a proper comparative.

The petitioner also offered in evidence two sheets prepared by the respondent showing statistics of the gross sales, cost of sales, net income, deductions, invested capital, and excess-profits tax of six corporations engaged in the manufacture of malleable iron or steel castings. This information had apparently been prepared in considering or reconsidering petitioner's request for assessment under section 210. Two of the corporations listed might properly be eliminated because they were engaged in the manufacture of grey iron

castings; so far as the record before us indicates, the others are as nearly comparable as may be obtained. The excess-profits-tax rate of these four exceeds that of the petitioner. If we eliminate one with gross sales smaller than petitioner and another with gross sales substantially larger, leaving two with substantially the same amount of sales although with a smaller amount of income, the result is a tax only slightly less than that asserted against the petitioner. The question naturally arises why one malleable iron company should have its tax rate computed under section 210 at 40.1 per cent, while another, in the same city and with substantially the same plant facilities, should find that a rate of 46.1 per cent is normal. The record establishes that the first of these companies had a net income of $201,092.67, while the second had a net income of $306,815.60. The record furnishes no basis for determining what other differences there may have been. Whether a mistake was made with respect to the first company, whether other comparatives existed than those which have been submitted, whether the situation of the first company required different comparatives, or whether there be some other reason, our decision must be the same upon the record before us. The tax asserted against the petitioner does not appear to exceed that which would be computed under section 210 of the Act by a comparison with representative corporations engaged in a like or similar trade.

Reviewed by the Board.

*Decision will be entered for the respondent.*

ARUNDELL agrees with the result.